## FABIAN TEBON, JR., AND ALICE TEBON, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4924–69.    Filed December 3, 1970.

*Robert E. Nelson*, for the petitioners.
*John L. Pedrick*, for the respondent.

### OPINION

FAY, *Judge:* Respondent has determined a deficiency of $224.07 in the income taxes of petitioners for the taxable year 1967. The sole question presented is whether in computing "averagable income" within the meaning of sections 1301 through 1305 [1] base period income may be less than zero.

The facts of this case have been fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners, Fabian Tebon, Jr. (hereinafter referred to as petitioner), and Alice Tebon, are husband and wife. They were residents of Luxemburg, Wis., at the time of the filing of their petition in this case. For the years 1963 through 1967 petitioners filed joint Federal income tax returns with the district director of internal revenue, Milwaukee, Wis.

Petitioner was engaged during the taxable year in question, as well as a number of years prior thereto, in a business described in his return as "sand, gravel." He also received income from other sources, including wages for services performed as a "laborer." Petitioner's Federal income tax returns for the years 1963, 1964, and 1965 reflected net operating losses of $428.70, $243.86, and $429.67, respectively. Such losses were carried over to the taxable year 1966 and deducted in computing taxable income. Petitioner also claimed personnel exemptions in each of the years 1963 through 1965, inclusive, of $1,800 and personal exemptions of $1,200 in 1966.

For the taxable year 1967 petitioner reported gross income of $15,262.40, consisting of $4,582.91 in wages and $10,679.49 in business income, and taxable income of $13,062.40. Petitioner computed his tax liability with respect to this income on the basis of the income averag-

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

ing provisions contained in sections 1301 through 1305, using for this purpose Schedule G, Form 1040. Such computations were set forth in his return as follows:

PART I—TAXABLE INCOME AND ADJUSTMENTS

| | (a) Computation year 1967 | (b) 1st preceding base period year 1966 | (c) 2nd preceding base period year 1965 | (d) 3rd preceding base period year 1964 | (e) 4th preceding base period year 1963 |
|---|---|---|---|---|---|
| 1 Taxable income * * *_____ | $13,062.40 | $6,605.04 | ($2,233.97) | ($2,068.35) | ($2,228.70) |
| *         *         * | | | | | |
| 6 Line 1 plus line 2, less lines 3, 4, and 5_____ | 13,062.40 | 6,605.04 | (2,233.97) | (2,068.35) | (2,228.70) |
| 7 Adjusted taxable income or base period income. Enter amount from line 6 or "Zero" if line 6 is less than zero_____ | 13,062.40 | 6,605.04 | (2,233.97) | (2,068.35) | (2,228.70) |

PART II—COMPUTATION OF AVERAGABLE INCOME

| | |
|---|---|
| 1 Adjusted taxable income (line 7, column (a), Part I) _____ | $13,062.40 |
| 2 33⅓% of the sum of line 7, columns (b), (c), (d), and (e), Part I_____ | 24.67 |
| *    *    *    *    *    * | * |
| 4 Averagable income (line 1 less lines 2 and 3(c))_____ | 13,037.73 |

Respondent has recomputed petitioner's income tax liability omitting from such computation any negative figures in connection with base period income and substituting therefor a zero figure.

The averaging provisions were enacted in 1964 for the purpose of mitigating the harsh effect of a progressive tax rate structure upon taxpayers having widely fluctuating or rapidly increasing incomes.[2] Generally, these provisions allow the excess of the current year's taxable income (adjusted as provided in section 1302(b)) over 133⅓ percent of the average taxable income of the prior 4 years (adjusted as provided in section 1302(c)(2)) to be taxed at lower than usual rates. Such excess, referred to in the statute as "averagable income," is taxed at bracket rates provided for the first 20 percent of such income.[3] The sole issue in this case concerns the validity of a regulation

[2] H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 233-234.

[3] The tax is computed in general by first determining the increase in tax which results from adding 20 percent of the averagable income to the remaining income and then multiplying by 5. The computation may become complicated under certain circumstances. See sec. 1301, I.R.C. 1954, which provides:

SEC. 1301 (a). LIMITATION ON TAX.—If an eligible individual has averagable income for the computation year, and if the amount of such income exceeds $3,000, then the tax imposed by section 1 for the computation year which is attributable to averagable income shall be 5 times the increase in tax under such section which would result from adding 20 percent of such income to the sum of—

(1) 133⅓ percent of average base period income, and

(2) the amount (if any) of the average base period capital gain net income.

interpreting the phrase "base period income," [4] defined in section 1302 (c) (2) in part as:

SEC. 1302(c) (2). BASE PERIOD INCOME.—The base period income for any taxable year is the taxable income for such year first increased and then decreased (but not below zero) in the following order:

    *        *        *        *        *        *        *

(B) Taxable income shall be decreased by the capital gain net income.

(C) If the decrease provided by paragraph (2) of subsection (b) applies to the computation year, the taxable income shall be decreased under the rules of such paragraph (2) (other than the limitation contained in subparagraph (C) thereof).

In accordance with a literal reading of the statute, petitioner's computation of base period income for 1963, 1964, and 1965 resulted in negative amounts attributable to the existence of negative taxable income in those years. Respondent, relying upon section 1.1302–3(b), Income Tax Regs., has eliminated negative base period incomes in the above years and substituted in their place the figure zero. This regulation provides:

(b) *Base period income*—(1) *Definition.* * * * Base period income for any taxable year *may never be less than zero.* [Emphasis added.]

It is clear that the regulation possesses no direct statutory support. The parenthetical phrase "but not below zero," which might at first glance appear to justify the regulatory provision, plainly refers to the required decreases in taxable income specified in section 1302(c) (2)(B) or (C) rather than to base period income generally. The statute provides that in computing base period income, such decreases may not reduce taxable income below zero; it does not state that base period income may never be less than zero. Thus, where taxable income is below zero prior to the decreases required by section 1302(c) (2) (B) or (C), it is arguable that a below zero base period income is fully warranted under the statute. Petitioner, in fact, argues that his use of negative base period income finds support in the parenthetical provision since the contrary regulation providing that base period income may *never* be less than zero renders the parenthetical entirely superfluous. Respondent, on the other hand, maintains that the parenthetical lends support to his regulation in the sense that it implies legislative disapproval of negative base period income. The above

---

[4] The terms "base period" and "base period year" are defined in sec. 1302(e) as follows:

SEC. 1302. DEFINITION OF AVERAGABLE INCOME; RELATED DEFINITIONS.

(e) OTHER RELATED DEFINITIONS.—For purposes of this part—

    *        *        *        *        *        *

(2) BASE PERIOD.—The term "base period" means the 4 taxable years immediately preceding the computation year.

(3) BASE PERIOD YEAR.—The term "base period year" means any of the 4 taxable years immediately preceding the computation year.

statutory analysis is further complicated by the Tax Reform Act of 1969 which has deleted the parenthetical in question.[5] The reason for the change is not stated in the legislative history, and the parties again draw differing conclusions from such legislative action. We find the statutory provision as it existed prior to the 1969 Tax Reform Act, as well as the subsequent deletion of the parenthetical in the Reform Act, inconclusive as to the proper resolution of the issue before us. Instead, we direct our attention to the regulation in question.

Petitioner, acknowledging the applicability of the regulations to the present facts, contests the validity of these regulations. Petitioner argues that the regulations conflict with the general purpose of the averaging provisions as well as with the language of the statute itself. As to the latter contention, petitioner maintains that the unqualified use of the term "taxable income" in the statute must be deemed to include negative taxable incomes.[6] Thus, as petitioner reads the statute, base period income, which is defined in terms of taxable income, may also be less than zero. With respect to the statutory purposes of the averaging provisions, petitioner argues that since the use of negative numbers for base period income takes into account loss as well as income-producing years, it more accurately reflects average base period income.

In addition to the general provisions of section 7805 instructing the Secretary or his delegate to prescribe necessary regulations for the enforcement of the internal revenue laws, the regulation in question is specifically authorized by section 1305, which provides:

SEC. 1305. REGULATIONS.

The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this part [secs. 1301–1305].

It has been held that power of the Commissioner to prescribe regulations is circumscribed by the will of Congress as expressed in the statute. A regulation which conflicts with the statutory provision is a mere nullity. *Manhattan Co.* v. *Commissioner*, 297 U.S. 129 (1936). The statute is the primary authority, and the regulations, to the ex-

---

[5] The amendment deleting the parenthetical in the 1969 Tax Reform Act is part of a massive change in the income averaging provisions and is applicable with respect to computation years beginning after Dec. 31, 1969. Thus, the statute as it existed prior to the 1969 Act is the applicable law in this case.

[6] See SEC. 63. TAXABLE INCOME DEFINED.

(a) GENERAL RULE.—Except as provided in subsection (b), for purposes of this subtitle the term "taxable income" means gross income, minus the deductions allowed by this chapter, other than the standard deduction allowed by part IV (sec. 141 and following).

Accordingly, where allowable deductions exceed gross income, the taxable income will be less than zero. The fact that taxable income may be below zero is uncontested by respondent. Respondent contends rather that "base period income," though defined as taxable income adjusted in the manner provided, may never be less than zero.

tent they are in conflict with the statute, are void. *Boykin* v. *Commissioner*, 260 F. 2d 249 (C.A. 8, 1958), modifying 29 T.C. 813 (1958). It is equally clear, however, that regulations, insofar as not inconsistent with the express statutory provisions, have the force and effect of law. *Maryland Casualty Co.* v. *United States*, 251 U.S. 342 (1920); *Boske* v. *Comingore*, 177 U.S. 459 (1900). And regulations must be upheld unless they are unreasonable and plainly inconsistent with revenue statutes. *Commissioner* v. *South Texas Co.*, 333 U.S. 496 (1948); *Lucas* v. *American Code Co.*, 280 U.S. 445 (1930); *Topps of Canada, Ltd.*, 36 T.C. 326 (1961); *Service Life Insurance Co.* v. *United States*, 293 F. 2d 72 (C.A. 8, 1961).

The statutory provision in question, it appears, is susceptible to both of the interpretations urged upon us by the parties. However, the test of the validity of a given regulation is not whether an alternative interpretation of the statute offered by petitioner is possible but rather whether the regulation is plainly unreasonable and inconsistent with the statute. In our view the regulation, when considered in light of the purpose of enactment and its relationship with other sections of the Code, cannot be so considered. This is particularly so where Congress has invested the Commissioner with specific power to prescribe regulations with respect to a small group of rather complex provisions.

The regulation in question provides that base period income may never be less than zero. The underlying rationale of this provision is not explained in the regulations, nor has respondent shed any light on this matter in his brief. However, in our view the purpose of a rule prohibiting the use of negative base period income is undoubtedly related to the overlapping character of the net operating loss provisions in the case of taxpayers sustaining losses during base period years.[7] These provisions quite clearly provide an additional method of averaging with respect to losses.

Under section 172(b), net operating losses may be carried back to the 3 preceding taxable years or forward to the 5 following taxable years. Thus, to the extent that carrybacks and carryovers are permitted, losses of a single year may be spread over a full 8-year period. In this sense, section 172 provides an even broader averaging device than the averaging provisions of subchapter Q, which provisions allow the spreading of income over only 5 taxable years. The regulation before us represents, in our estimation, an attempt to coordinate the above alternative methods of averaging in the case of taxpayers having negative taxable income. On this basis we think that the variant treatment found in the regulations between taxpayers

---

[7] For a general discussion of this subject, see 24 Tax L. Rev. 53.

experiencing fluctuating positive income and those sustaining losses during some or all base period years may be justified. It is true, as petitioner argues, that the use of a zero figure in place of the actual negative base period income fails to allow the taxpayer the full benefit of the averaging provisions. However, when this restriction is considered together with the net operating loss provisions, it becomes apparent that the latter provisions provide a complementary measure of relief in this situation.

The instant case provides a clear illustration of the interrelationship of the applicable statutory provisions. Petitioner had suffered net operating losses in the years 1963, 1964, and 1965 of $428.70, $243.86, and $429.67, respectively. These losses were carried over to 1966 and deducted from gross income. In determining his taxable income during the base period years 1963, 1964, and 1965 for purposes of the averaging computation, petitioner reflected the carryover of his net operating losses to 1966 by increasing his adjusted gross income from the amount of his net operating losses, stated above, to zero.[8] He then deducted dependency exemptions, ranging from $1,200 to $1,800, and a standard deduction,[9] both of which items had been previously omitted from the computation of net operating losses as required by section 172(d). The resulting negative taxable income was used in computing base period income.

The upward adjustment of taxable income to reflect net operating losses carried over to 1966 precludes the possibility of the double use of net operating losses in connection with the net operating loss and averaging provisions. Petitioner has taken the position that the application of sections 172 and 1301 *et seq.*, in this manner constitutes a proper implementation of the statutory provisions. By so doing, petitioner has secured the benefit of averaging with respect to the dependency exemptions and standard deduction which are unavailable

---

[8] In a computation schedule attached to his brief, petitioner has revised the computation shown in his return and has determined his averagable income in the following manner:

|  | 1963 | 1964 | 1965 | 1966 |
|---|---|---|---|---|
| Adjusted gross income (after NOL carryforward) | --- | --- | --- | $8,672.27 |
| Minus—standard deduction | --- | ($500) | ($500) | (867.23) |
| Minus—personal exemptions | ($1,800) | (1,800) | (1,800) | (1,200.00) |
| Taxable income | (1,800) | (2,300) | (2,300) | 6,605.04 |
| Total base period income | | | 205.04 | |
| Average base period income (÷4) | | | 51.26 | |
| 133% of average base period income | | | 68.18 | |
| Taxable income for 1967 | | | 13,062.40 | |
| Less: 133% of average base period income | | | 68.18 | |
| Averagable income | | | 12,994.22 | |

[9] The standard deduction had not been claimed in the prior years and it is respondent's position that it cannot be deducted at this late date. Because of our resolution of the primary issue, we do not reach this question.

to petitioner under the net operating loss provisions. The regulations, on the other hand, by disallowing the use of negative figures, restrict the availability of income averaging in the case of negative taxable income to the use of the net operating loss provisions. The result is that dependency exemptions and like deductions, excluded under section 172(d) from the definition of net operating loss, remain ineligible for averaging.

The regulatory provision is apparently predicated upon the reasonable proposition that where negative taxable income is involved, the net operating loss section should take precedence over the averaging provisions. Petitioner's sole recourse in such case is to section 172. While, as we have stated, petitioner's position is not on its face unreasonable, we consider the regulation a valid interpretation of the statute within the broad degree of latitude conferred by the statute upon the Commissioner.

Reviewed by the Court.

*Decision will be entered for the respondent.*

FORRESTER, J., dissenting: In my view the language of section 1302 (c) (2) leaves no room for interpretation or movement. The pertinent words of the section are:

BASE PERIOD INCOME.—The base period income for any taxable year is the taxable income for such year first increased and then decreased (but not below zero) * * *

It is simply a syllogism that taxable income for the taxable year could never go below zero if the *lowest* allowable figure for each of the base period years was zero. The language of regulation section 1.1302–3(b) (1) renders the parenthetical element of the statute meaningless and amounts to legislation by regulation. I believe that the regulation is contrary to the express language of the statute and would hold it invalid.