JOHN A. WOOLF and ESTATE OF SANDRA D. WOOLF, DECEASED, JOHN A. WOOLF, EXECUTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woolf v. Commissioner
Docket No. 6395-80.
United States Tax Court
T.C. Memo 1981-286; 1981 Tax Ct. Memo LEXIS 458; 42 T.C.M. (CCH) 63; T.C.M. (RIA) 81286; June 11, 1981
John A. Woolf, pro se. Leslie J. Spiegel, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined a deficiency in petitioners' *462 Federal income tax for the year 1977 in the amount of $ 3,075. The questions for decision are: (1) Whether any part of petitioners' gain on the sale of their residence is subject to the minimum tax imposed by section 56; and (2) whether, in computing the tax under income-averaging, petitioners' base period income may ever be less than $ 3,200, for pre-1977 years for purposes of computing "average base period income," under section 1302(b). FINDINGS OF FACT Some of the facts in this case were stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner John A. Woolf resided in Chatham, New Jersey at the time he filed the petition in this case on his own behalf and as executor of the Estate of Sandra D. Woolf, Deceased. John A. Woolf and Sandra D. Woolf, who were husband and wife, filed a Federal joint income tax return for the year 1977. John A. Woolf and Sandra D. Woolf (hereinafter referred to as petitioners) received loans from Chatham Savings and Loan Association on September 11, 1975, and December 15, 1976, in the amounts of $ 60,000 and $ 5,000, respectively. Both of those loans were secured by mortgages *463 on a residence, located at 132 Fairmont Avenue, Chatham, New Jersey, owned by them. On August 29, 1977, petitioners sold their residence at 132 Fairmont Avenue to Thomas J. Healey and Margaret S. Healey for $ 131,500. They recognized a long term capital gain on that sale in the amount of $ 61,010.54. After subtracting the deduction for capital gains, allowed by section 1202, as in effect for 1977, they showed a capital gain of $ 30,505.27, on their tax return for the year 1977. Petitioners, however, failed to treat one-half of their net capital gain as an item of tax preference subject to the minimum tax under section 56. Respondent, therefore, determined the deficiency in dispute in this case. Petitioners' itemized deductions and exemptions exceeded their adjusted gross income by $ 8,373.72 for the year 1973, $ 1,175.17 for the year 1974, $ 7,914.36 for the year 1975, and $ 13,506.35 for the year 1976. In order to compute their tax liability for the year 1977, petitioners chose to have the benefits of income averaging, provided by sections 1301 through 1305, and, therefore, filed a Schedule G (Income Averaging) with their Form 1040 for 1977. [3] On that Schedule G, petitioners *464 showed no amounts for taxable income for each of the years 1973, 1974, 1975, and 1976. They, then, added $ 3,200 to their taxable income for each of the years 1973 through 1976, as called for by the instructions on Schedule G, to arrive at base period income in the amount of $ 3,200 for each of those years. Respondent notified petitioners, by a letter dated December 18, 1978, that he had recomputed their tax on account of certain mathematical errors made by them. Petitioners concede the correctness of that recomputation, but now claim that they are entitled to treat the amounts by which their itemized deductions and exemptions exceeded their adjusted gross income for each year as their taxable income for each of the years 1973 through 1976, for purposes of applying the income averaging provisions. In other words, they claim that their income for each of the base period years, for purposes of computing average base period income, may be less than $ 3,200. OPINION Section 301 of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, 580, added the *465 minimum tax provisions to the Code. The minimum tax generally equaled ten percent of the amount by which the sum of the taxpayer's items of tax preference, as defined in section 57, exceeded $ 30,000. The Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1549, enacted on October 4, 1976, amended section 56(a), so as to impose the tax at a rate of 15 percent on the amount by which the sum of the items of tax preference exceeds the greater of $ 10,000 or the "regular tax deduction." In the case of an individual, one-half of his net capital gain was an item of tax preference for the year 1977. See section 57(a)(9)(A). Petitioners appear to dispute primarily the validity of the application of the minimum tax provisions as amended by the Tax Reform Act of 1976 to that portion of their gain that represents appreciation in the value of their house which occurred prior to the amendment. Although the value of petitioners' house may have increased prior to the amendment of the minimum tax provisions, the increase in its value did not constitute income for tax purposes, until its realization, *466 when the house was sold in 1977. See secs. 61(a)(3) and 1001. In light of the recent decision of the Supreme Court in United States v. Darusmont, 449 U.S.     (Jan. 12, 1981), holding that the retroactive application of the Tax Reform Act of 1976 as it applies to the minimum tax provisions respecting capital gains does not result in a denial of due process guaranteed by the Fifth Amendment to the United States Constitution, we find no constitutional, or other, invalidity in the application of the 1976 amendments in the instant case to the increase in the value of petitioners' house that was not realized until 1977. If petitioners had sold their home before the 1976 amendments of the minimum tax provisions became effective or after they had attained the age of 55 or 65, their tax upon its sale probably would have been less than it was when they sold it. See sec. 121. Petitioners, therefore, argue that their rights protected by the equal protection clause of the United States Constitution have been violated since the tax laws are capricious and discriminatory. The changes made *467 in the minimum tax provisions did not divest petitioners of any constitutionally protected rights. Cf. Darusmont v. United States, supra; Cohan v. Commissioner, 39 F.2d 540, 545 (2d Cir. 1930). Section 121, providing an exclusion of gain from gross income in the case of certain older individuals, is a reasonable attempt by Congress to provide adequately for those individuals who, because of their age and particular situation in life, may desire to change residences. [4] We, accordingly, find no constitutional violation resulting from the fact that petitioners' tax consequences may have been different from those of other individuals who sold their personal residences at other times. *468 In an attempt to avoid imposition of the minimum tax in 1977, petitioners claim, alternatively, that they are entitled to treat the sale of their house for tax purposes either as an installment sale under section 453, because the mortgage proceeds that they received in 1975 and 1976 were an integral part of the selling price, or as an involuntary conversion, because adverse financial circumstances forced them to sell the house when Chatham Savings and Loan Association threatened them with foreclosure. The mortgage proceeds that petitioners received in 1975 and 1976 were not received in connection with the sale of their house. Rather, they were merely loans received under a specific obligation of repayment and were, therefore, not even includable in petitioners' income. See James v. United States,366 U.S. 213, 219 (1961). Accordingly, petitioners may not report such proceeds as income from the sale of their house on the installment method. While their misfortunes are regretable and petitioners have our sympathy, a foreclosure or a threat of foreclosure does not refult *469 in an involuntary conversion, within the meaning of section 1033. Cf. Dear Publication & Radio v. Commissioner, 274 F.2d 656, 660-661 (3d Cir. 1960); Cooperative Publishing Co. v. Commissioner, 115 F.2d 1017, 1021 (9th Cir. 1940). Petitioners contend that the amendment of the minimum tax "acted as an ex post facto law." However, Article I, Section 9 of the United States Constitution, prohibiting the passage of an ex post facto law, applies only to laws regarding criminal punishment. Mathes v. Commissioner, 63 T.C. 642, 644 (1975). [5] That, of course, is not the situation here. Petitioners contend further that Congress did not intend for the minimum tax to apply to gain from the sale of a taxpayer's principal residence and has, therefore, passed legislation "to remedy this defect." Although Congress has added section 57(a)(9)(D) to the Code, which provides that net capital gain from the sale or exchange of a taxpayer's principal residence shall not be treated as an item of tax preference, it did not make that *470 section effective for the year 1977. Sec. 421, Rev. Act of 1978, Pub. L. 95-600, 62 Stat. 2871. It, accordingly, is of no moment in the instant case. See Buttke v. Commissioner, 72 T.C. 677, 680-681 (1979), affd. 625 F.2d 202 (8th Cir. 1980), cert. den.     U.S.     (March 9, 1981). Finally, petitioners make a plea for equitable relief from imposition of the minimum tax. Although we sympathize with the situation of petitioners, our jurisdiction does not extend to providing relief on purely equitable grounds; it exists only to the extent specifically conferred by statute. Section 7442; Commissioner v. Gooch Milling & Elevator Co.,320 U.S. 418 (1943); Estate of Rosenberg v. Commissioner, 73 T.C. 1014, 1017-1018 (1980). We can only determine liability for tax based on the provisions of the Internal Revenue Code. In accordance with the foregoing, we sustain respondent's determination respecting the minimum tax liability of petitioners. Section 1302(b)(2) defines the phrase "base period income" for a taxable *471 year, in pertinent part, as the taxable income for that year with certain adjustments. The term "taxable income" is defined by section 63(b), in the case of an individual (for whom a computation is not required under section 63(e)), as adjusted gross income reduced by both excess itemized deductions and deductions for personal exemptions. Section 1.1302-2(b), Income Tax Regs., however, provides as follows: (b) Base period income--(1) Definition. * * * Base period income for any taxable year may never be less than zero. Section 102(b)(15) of the Tax Reduction and Simplification Act of 1977, Pub. L. 95-30, 91 Stat. 126, 138, added a new section 1302(b)(3) to the Code in order to leave taxpayers in essentially the same position they were in before the changes made by that Act in the definition of taxable income. As in effect for the taxable year 1977, section 1302(b)(3) provided as follows: (3) Transitional rule for determining base period income.--The base period income * * * for any taxable year beginning before January 1, 1977, shall be increased by the *472 amount of the taxpayer's zero bracket amount for the computation year. [6]
Petitioners' zero bracket amount for the year 1977 (the computation year) was $ 3,200, since they filed a joint return. Section 63(d)(1). In Tebon v. Commissioner, 55 T.C. 410 (1970), the taxpayer claimed that he was entitled to use negative base period income, for purposes of applying the income averaging provisions. He argued, as do petitioners in this case, that section 1.1302-2(b), Income Tax Regs., conflicts with the language of the statute which must be deemed to include negative taxable income. [7] After making an extensive examination of the purpose of the regulation and its relationship to other sections of the Code, this Court, in the Tebon case, upheld the regulation as "a valid interpretation of the statute." Tebon v. Commissioner, supra at 416. The regulation, however, does not reflect the transitional rule provided by section 1302(b)(3). That transitional rule requires that petitioners' *473 base period income be increased by $ 3,200 for each of the years 1973 through 1976. After applying the rule enunciated in section 1302(b)(3), we, therefore, conclude that petitioners' base period income for each of those years may not be less than $ 3,200 for the purpose of computing "average base period income." Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Respondent has conceded that petitioners are entitled to the benefits of income averaging for the taxable year 1977.↩
4. The fact that some taxpayers who meet specific requirements are treated differently from other taxpayers is not in itself discriminatory or violative of constitutional rights, if there is a rational justification for the different treatment. United States v. Maryland Savings-Share Ins. Corp., 400 U.S. 4 (1970). See Lunsford v. Commissioner, T.C. Memo. 1973-17↩; and Bittker, Federal Income Taxation of Income, Estates and Gifts, par. 1.2.5, p. 1-27 (1981).
5. See Witte v. Commissioner,T.C. Memo. 1980-393↩, on appeal (5th Cir. December 15, 1980).
6. The term computation year means the year for which the taxpayer chooses to elect the benefits of income averaging. Sec. 1302(c)(1)↩.
7. Tebon v. Commissioner, 55 T.C. 410, 413 n. 6 (1970). The current definition of taxable income was substituted for the previous definition, appearing in the Tebon↩ case, by section 102(a) of the Tax Reduction and Simplification Act of 1977, Pub.L. 95-30, 91 Stat. 135. This change in the definition of taxable income was required by that Act's replacement of the standard deduction by the zero bracket amount and its modification of the tax tables.