JOHN R. MONSON AND SUSAN B. MONSON, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5641–80.     Filed July 23, 1981.

*John R. Monson*, pro se.
*Maureen T. O'Brien*, for the respondent.

OPINION

CHABOT, *Judge*: Respondent determined a deficiency in Federal income tax against petitioners for 1977 in the amount of $475.32. The issue for decision is whether, in computing "averagable income" for purposes of income averaging for 1977, base period income under section 1302[1] for any pre–1977

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.

tax year may never be less than the applicable zero bracket amount[2] (as contended by respondent) or never be less than zero (as contended by petitioners).

This case was submitted fully stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioners, husband and wife, resided in Amherst, N.H.

On their 1977 joint Federal income tax return, petitioners elected to compute their tax liability by use of the income averaging provisions contained in sections 1301 through 1305, attaching for that purpose Schedule G of Form 1040 to their return. The computations relating to base period income for 1973 through 1976 reflected on that Schedule G are shown in table I:

*Table I*

| | 1976 | 1975 | 1974 | 1973 |
|---|---|---|---|---|
| 1. Taxable income | $34,095 | $22,176 | ($7,955) | ($1,738) |
| 2. Income excluded under secs. 911, 931 | 0 | 0 | 0 | 0 |
| 3. Zero bracket amount | 3,200 | 3,200 | 3,200 | 3,200 |
| 4. Base period income (add lines 1, 2, and 3). If less than zero, zero. | 37,295 | 25,376 | 0 | 1,462 |

The following appears at the top of the Schedule G used by petitioners:

Income Averaging
See instructions on pages 3 and 4.
Attach to Form 1040.

The instructions thus referred to include the following:

Specific Instructions for Page 1

*The following instructions are numbered to correspond with the line numbers on page 1, Schedule G.*

\* \* \* \* \* \* \*

Line 1.—Except as noted below, enter on line 1 the amount (*never less than zero*) from—[Emphasis supplied.]

---

[2] In the instant case, $3,200.

The parties agree that (1) petitioners' computations of base period income for 1975 and 1976 are correct, and (2) for 1973 and 1974 petitioners' adjusted gross income less itemized deductions and exemptions are ($1,738) and ($7,955), respectively.

Respondent contends that the negative amounts shown as taxable income for 1973 and 1974 are to be adjusted upward to zero before adding the $3,200 zero bracket amounts thereto. Petitioners contend that the $3,200 zero bracket amounts are to be added to the negative taxable income amounts shown in table I *supra*, and that only the sums are to be adjusted upward to zero. Respondent's method results in average base period taxable income of $17,268, and petitioners' method results in $16,033.

We agree with respondent.

Section 1301 provides as follows:

SEC. 1301. LIMITATION ON TAX.

If an eligible individual has averagable income for the computation year, and if the amount of such income exceeds $3,000, then the tax imposed by section 1 for the computation year which is attributable to averagable income shall be 5 times the increase in tax under such section which would result from adding 20 percent of such income to 120 percent of average base period income.

Section 1302 defines averagable income, average base period income, and various other related terms. It provides that average base period income is one-fourth of the sum of the base period incomes for the base period, the 4 taxable years preceding the taxable year to which the income averaging computation relates. Subsection (b)(2) of that section states that the base period income for any taxable year is the taxable income for that year, with certain enumerated adjustments (none of which are applicable in the instant case).

Section 1.1302–2(b)(1), Income Tax Regs., interprets section 1302(b)(2) by providing in relevant part that "Base period income for any taxable year may never be less than zero." In *Tebon v. Commissioner*, 55 T.C. 410 (1970), a Court-reviewed opinion, we upheld the validity of this regulation.[3]

---

[3]In *Tebon*, the taxable year before the Court (the "computation year") was 1967, the statute was sec. 1302(c)(2), and the regulation was sec. 1.1302–3(b)(1). The statute was modified by sec. 311(b) of the Tax Reform Act of 1969 (Pub. L. 91–172, 83 Stat. 586), which,

Title I of the Tax Reduction and Simplification Act of 1977 (Pub. L. 95–30, 91 Stat. 127), substituted zero bracket amounts for the standard deduction after 1976. In order to incorporate the zero bracket amounts into the tax tables and the tax rate schedules, the definition of taxable income was revised by section 102(a) of the 1977 Act (91 Stat. 135).

As applied to petitioners, the 1977 Act change from standard deduction to zero bracket amount resulted in their taxable income being increased by $3,200 over what it would have been under prior law. This did not increase their tax liability since the rate schedules also were adjusted so that no tax was imposed on the first $3,200 of taxable income (hence the term, "zero bracket amount"). The Congress concluded that, in order to maintain comparability between post–1976 years and pre–1977 years for income averaging purposes, the pre–1977 years had to be adjusted. The mechanism chosen by the Congress to accomplish this result was to add (by sec. 102(b)(15) of the 1977 Act, 91 Stat. 138) paragraph (3) to section 1302(b), to read as follows:

(3) TRANSITIONAL RULE FOR DETERMINING BASE PERIOD INCOME.—The base period income (*determined under paragraph (2)*) for any taxable year beginning before January 1, 1977, shall be increased by the amount of the taxpayer's zero bracket amount for the computation year. [Emphasis supplied.]

The statutory language of section 1302(b)(3) is plain. For pre–1977 years, base period income is *first to be determined under section 1302(b)(2)*. Under section 1.1302–2(b)(1), Income Tax Regs., the amount so determined may never be less than zero for any taxable year. The appropriate zero bracket amount is then to be added to the amount so determined.

From the foregoing, we conclude that petitioners are required to adjust their negative taxable income figures of ($1,738) and ($7,955) for 1973 and 1974, respectively, to zero in order to compute their base period incomes for these years,

among other changes, redesignated the provision as sec. 1302(b)(2). The regulation was modified by T.D. 7196, filed July 12, 1972, 1972–2 C.B. 499, which essentially conformed to the 1969 Act changes and redesignated the provision as sec. 1.1302–2(b)(1). Neither side suggests that the 1969 Act or the 1972 T.D. has any effect on the continuing validity of *Tebon* and the regulation, as applied to the instant case.

and then to add their $3,200 zero bracket amount to each such zero.

Petitioners rely on the legislative history[4] and argue that for pre–1977 years Congress intended that any adjustment up to zero is to be made *only after* the zero bracket amount is added to taxable income. They contend that to otherwise interpret section 1302(b)(3) would thwart the congressional intent of leaving taxpayers "in a position similar to that which they would occupy if the provisions were unchanged," and in this case will involve more than the de minimis additional amount of taxable income contemplated by Congress.

Our reading of the statute and explanation leads us to conclude that petitioners are mistaken. First, the statute plainly provides that base period income is to be determined under section 1302(b)(2), *before* the addition of the zero bracket amount. Although the explanation uses the terms "base period income" and "taxable income" interchangeably, we see no indication that in making the determination under section 1302(b)(2) the limitation of section 1.1302–2(b)(1), Income Tax Regs., previously upheld by us, should not apply. Second, that

---

[4]S. Rept. 95–66, p. 58 (1977), 1977–1 C.B. 469, 484, accompanying the Tax Reduction and Simplification Act of 1977, explains:

"*Income averaging.*—The bill's change in the definition of taxable income also requires technical adjustments in the Code provisions for income averaging. In order to leave taxpayers in a position similar to that which they would occupy if the definition of taxable income were not changed by the bill, their taxable income must be adjusted for years prior to those beginning in 1977, when the change in the definition of taxable income becomes effective. The simplest method for giving taxpayers essentially the same access to and the same advantages from income averaging as they enjoy under present law is to increase their pre–1977 base period taxable income, that is, their taxable income for taxable years beginning in 1973, 1974, 1975, and 1976, by their zero bracket amount. Although the zero bracket amount added to the pre–1977 taxable income generally exceeds a taxpayer's standard deduction for each of those years, the use of a single flat amount is simpler than determining four separate standard deductions. Furthermore, any lost tax savings to a taxpayer because of adding in the zero bracket amount instead of a standard deduction results in only a slightly higher taxable income, and after averaging, will involve only a *de minimis* amount, probably well under $20. By making the adjustments backwards to prior years, the need for these adjustments will eventually disappear as present law taxable income years (that is, taxable years before 1977) drop from the four base years. In addition, this adjustment will prevent an undesirable one-time surge in the number of taxpayers eligible for income averaging in 1977. If no adjustment were made for pre–1977 years, not only would the taxpayer using averaging in 1977 have a higher averageable income, but more taxpayers would be artificially eligible because they would be comparing new taxable income from which no reduction for a standard deduction has been made, with the present law taxable income for four prior years when taxable income was reduced by a standard deduction."

See also H. Rept. 95–27 (Part 1), p. 48, 1977–1 C.B. 501, 511.

interpretation does not thwart any of the purposes stated in the explanation because the petitioners misperceive the point to which those statements relate. That point is that the increase in base period income for pre–1977 years was necessary for income averaging purposes in order to equate taxable income for those years, which was reduced by a standard deduction, for comparison with taxable income after the change for zero bracket amount, which would not be so reduced. Thus, the statement regarding "*de minimis* amount" of additional taxable income relates to the difference between increasing pre–1977 tax year base period income by the zero bracket amount instead of the applicable standard deduction. It does not refer to the adjustment in this case, which is attributable to the use of negative figures in computing base period income under section 1302(b)(2). The statement regarding leaving taxpayers in a position similar to that which they would have occupied, had the change in the definition of taxable income not occurred, refers to the adjustment to enable comparison of taxable income before the change with that afterwards.

Petitioners also contend that we should adopt their interpretation because respondent has wavered in his position, referring to a statement on Schedule G of the 1977 tax return to the effect that if base period income (taxable income subject to certain adjustments) as increased by the zero bracket amount is a negative figure, then $0 should be entered. However, this ignores the fact that the instructions for Schedule G also provide that the amount to be entered as taxable income (line 1) on the schedule should never be less than zero. At worst, Schedule G and its attendant instructions for 1977 created an apparent conflict. Neither the Court nor respondent is bound to resolve that conflict in petitioners' favor. We opt for that interpretation to which we are directed by the statute, the regulation, and *Tebon v. Commissioner, supra.*

Finally, in their reply brief, petitioners state that for 1977 and later taxable years "excess itemized deductions" (defined in section 63(c) as the excess (if any) of itemized deductions over the applicable zero bracket amount) can "reduce taxable income to zero and base period income to zero under Section 1302(b)(2) of the Code." Again quoting portions of the legislative history underlying the enactment of section 1302(b)(3) (see

note 4 *supra*), they argue that Congress intended to afford the same treatment for pre–1977 tax years. The basic change from standard deduction to zero bracket amount makes income averaging slightly less generous than under pre–1977 law to those with post–1976 base period incomes more than five-sixths of their zero bracket amounts, and somewhat more generous to those with post–1976 base period incomes less than five-sixths of their zero bracket amounts. The Congress might have chosen to provide transition rules matching the pre–1977 rules or matching the post–1976 rules. The rules it enacted for the transition period (taxable years 1977 through 1980) did not precisely match either set.[5] We take the statute as we find it.

We hold for respondent.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[5]Davies & Hicks, "Income averaging: a practical evaluation of the cost of simplification," 147 J. of Accountancy 88, 91–92 (Jan. 1979); Ross, Davies & Hicks, "More on income averaging," 148 J. of Accountancy 96, 97 (Dec. 1979); Rabin & Richard, "Still more on income averaging," 12 Tax Advisor 348, 349–350 (June 1981).