RICHARD L. FERGUSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferguson v. Commissioner
Docket No. 11308-80.
United States Tax Court
T.C. Memo 1981-470; 1981 Tax Ct. Memo LEXIS 266; 42 T.C.M. (CCH) 917; T.C.M. (RIA) 81470; August 31, 1981. Richard L. Ferguson, pro se. Beatrice M. Pearson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *267 OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for the year 1978 in the amount of $ 506.54. The only issue for decision is whether petitioner's base period income for each of the years 1974, 1975, and 1976, computed under section 1302(b)(2), and increased as required under section 1302(b)(3), must be at least equal to his zero bracket amount. FINDINGS OF FACT All of the facts in this case were stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Richard L. Ferguson resided in Mill Valley, California, at the time of the filing of his petition. Petitioner timely filed a Federal income tax return for the year 1978. Petitioner elected to compute his tax liability by means of the income averaging provisions contained in sections 1301 through 1305. Accordingly, he completed Schedule G of Form 1040. His computation of base period income on lines one through six of the form was set forth as follows: (a)
(b)
(c)
(d)
1977
1976
1975
1974
1. Enter amount from Form 1040
(1977) - line 34, Form 1040A -
line 10
3,441
2. Multiply $ 750 by the total
number
of exemptions claimed in 1977
750
3. Taxable Income (subtract line 2
from line 1). If less than zero,
enter zero
2,691
(1,769)
(2,165)
(1,070)
4. * * *
5. If you checked on your 1978 Form
1040, box * * * 1 or 4 enter $ 2,200 * * * in columns (b), (c), and (d)
2,200 2,200 2,200 6. Base period income (add lines 3, 4
and 5)
2,691
431 35 1,130 *268 Respondent issued a notice of deficiency to petitioner on April 17, 1980. In a statement attached thereto, respondent recomputed petitioner's tax liability by replacing with zeros the negative figures petitioner had entered on line 3, Schedule G for the years 1976, 1975, and 1974, bringing the computation into accordance with the instructions on the form. This resulted, after the amounts on line 3 were increased by petitioner's zero bracket amount, in base period income for each of those years equal to the zero bracket amount and, ultimately, an increase in petitioner's 1978 tax liability of $ 506.54. OPINION Eligible taxpayers may elect to compute their tax liability using the income averaging provisions of sections 1301 through 1305. Section 1301 provides as follows: Sec. 1301. Limitation on tax. If an eligible individual has averagable income for the computation year, and if the amount of such income exceeds $ 3,000, then the tax imposed by section 1 for the computation year which is attributable to averagable income shall be 5 times the increase in tax which would result from adding 20 percent of such income to 120 percent of average base period income. [3]
*269 The term "average base period income" is defined in section 1302(b)(1) as "one-fourth of the sum of the base period incomes for the base period." Section 1302(b)(2) defines "base period income" for a taxable year as the taxable income for such year, with certain adjustments which are not applicable in the present case. Section 1.1302-2(b), Income Tax Regs., provides as follows: (b) Base period income -- (1) Definition * * * Base period income for any taxable year may never be less than zero. In Tebon v. Commissioner, 55 T.C. 410 (1970), the propriety of the Regulation quoted above was at issue. The taxpayer in that case claimed that he was entitled to use negative base period income in applying the income averaging provisions. He argued that, contrary to the Regulation, the use of the term "taxable income" in the statutory definition of "base period income" must be deemed to include negative taxable income. This Court, however, upheld the Regulation as "a valid interpretation of the statute." It was there found that the Regulation was "apparently predicated upon the reasonable proposition that where negative taxable income is involved, the net operating loss *270 section should take precedence over the averaging provisions." Subsequent to the decision in the Tebon case, section 102(b)(15) of the Tax Reduction and Simplification Act of 1977, Pub. L. 95-30, 91 Stat. 126, 138, added a new section 1302(b)(3) to the Code in order of leave taxpayers who elected to average income in essentially the same position in which they were before the changes made by that Act in the definition of taxable income. [4] As in effect for the taxable year 1978, section 1302(b)(3) provided as follows: (3) Transitional rule for determining base period income.--The base period income (determined under paragraph (2)) for any taxable year beginning before January 1, 1977, shall be increased by the amount of the taxpayer's zero bracket amount for the computation year. The petitioner argues that, since the 1977 Act, it is base period income as increased pursuant to section 1302(b)(3) which section 1.1302-2(b) of the Regulations requires to be not less than zero. It is respondent's position *271 that it is base period income prior to the increase required by section 1302(b)(3) which may not be less than zero, with the result that base period income, as increased, may not be less than the zero bracket amount, or $ 2,200 in petitioner's case for the taxable year in question. Petitioner's argument has previously been advanced by other taxpayers without success. [5] Most recently, the taxpayers in Monson v. Commissioner, 77 T.C.     (July 23, 1981), argued, as petitioner does here, that it was only after the increase by the applicable zero bracket amount required for pre-1977 taxable years that base period income must be no less than zero. This Court there held, however, that: The statutory language of section 1302(b)(3) is plain. For pre-1977 years base period income is first to be determined under section 1302(b)(2). Under section 1.1302-2(b)(1), Income Tax Regs., the amount so determined may never be less than zero for any taxable year. The appropriate zero bracket amount is then to be added to the amount so determined. It *272 is uncontested that petitioner's taxable income for each of the years 1976, 1975, and 1974 was ($ 1,769), ($ 2,165), and ($ 1,070), respectively. Under the opinion in Monson, the petitioner must first determine his base period income for the years in dispute, as provided by section 1302(b)(2). Under this section, petitioner's base period income is initially equal to his taxable income for each of those years, since the adjustments required by section 1302(b)(2) are inapplicable. Inasmuch as these figures are less than zero, they are required by section 1.1302-2(b) of the Regulations to be adjusted upward to zero at this point in the computation. Petitioner's base period income of zero for each of the three years, as thus determined under section 1302(b)(2) and the accompanying regulation, is then required by section 1302(b)(3) to be increased by the zero bracket amount. Therefore, petitioner's base period income adjusted as required by section 1302(b)(3) for each of the years in question must be at least equal to his zero bracket amount.
In support of his contention that it is only after the increase required by section 1302(b)(3) that base period income may not be less than *273 zero, petitioner argues that the "base period income" referred to in section 1.1302-2(b)(1) of the Regulations is the figure which appears on line 6 of Schedule G. Petitioner points out that "no other line in Schedule G is labeled 'Base period income.'" The respondent admits, and we agree, that "the instructions on Schedule G are not a model of precision." We are guided, however, not by those instructions, but by the Code, the Regulations, and the decided cases. It is unfortunate that the language of an Internal Revenue Service form is ambiguous, although some such instances are, perhaps, inevitable in any attempt to translate complex statutory provisions into the simple form of a schedule. But, ambiguous or not, Schedule G does not amend the statute on which our decision is based. Petitioner further argues that respondent's petition that pre-1977 base period income may ultimately be no less than the zero bracket amount denies the use of the zero rate bracket to taxpayers who use the income averaging provisions. We do not find that respondent's position has this effect. While respondent's position would, in some cases, cause the taxpayer's average base period income to be higher *274 and his averageable income correspondingly lower, the taxpayer's income for the computation year up to an amount equal to 120 percent of his average base period income would still be taxed at the rates found in the lower tax brackets, beginning with the zero rate bracket. Accordingly, the determination of the respondent is sustained. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. The term computation year means the year for which the taxpayer chooses the benefits of income averaging. Sec. 1302(c)(1).↩
4. The Act replaced the standard deduction, which had previously been in use, with a zero rate bracket which was incorporated into the tax rate tables of section 1.↩
5. Woolf v. Commissioner, T.C. Memo. 1981-286; Bode v. Commissioner, T.C. Memo. 1981-300↩.